**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 74.]**

CLEVELAND BAR ASSOCIATION *v.* BRIGGS.

**[Cite as *Cleveland Bar Assn. v. Briggs*, 2000-Ohio-441.]**

*Attorneys at law—Misconduct—One-year suspension stayed, with probation and monitoring—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Failing to act competently in a legal matter.*

(No. 99-1576—Submitted January 11, 2000—Decided May 24, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners and Grievances and Discipline of the Supreme Court, No. 98-34.

_____

{¶ 1} On June 8, 1998, relator, Cleveland Bar Association, filed a complaint charging respondent, Beverly M. Briggs of Bedford, Ohio, Attorney Registration No. 0022754, with several violations of the Disciplinary Rules. Respondent answered and the matter was submitted on joint stipulations to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that in November 1991, respondent, who was a friend of the Conte family, became trustee of the Ralph W. Conte Trust ("trust"), an *inter vivos* trust with Ralph Conte's wife, Mary Jane (known as "Sharon"), and his children, Nichole and Ralph, Jr., as beneficiaries. In August 1993, respondent, at the insistence of Sharon, filed incorporation papers for a company called Raphael's Inc., and named herself as the sole incorporator and the statutory agent. Around the same time, Sharon executed a power of attorney in favor of respondent. In September 1993, Sharon, Cathy Turay, Raphael's Inc., and respondent, in her individual capacity, agreed to purchase real estate in Garfield Heights, Ohio, together with a restaurant and tavern located on the premises.

{¶ 3} In March 1994, the trust received $425,000 as a result of the liquidation of Florida real estate, and in May 1994, respondent caused Raphael's

Inc. to issue one hundred shares of common stock, fifty of which were distributed to Cathy Turay, twenty-five to respondent in her individual capacity, and twenty-five to the trust. On behalf of the trust, respondent paid $18,138.69 to Raphael's Inc. Respondent also paid $85,719.12 to Raphael's Inc. from trust funds, noting that this latter payment was a "distribution" to Sharon.

{¶ 4} Respondent claimed that at all times she held stock and made investments, not in her own name, but on behalf of Sharon in order to prevent Sharon's creditors from attaching Sharon's property. Nonetheless, the Probate Court of Cuyahoga County, in removing respondent as trustee and awarding damages against her, found that respondent had engaged in self-dealing and so violated her fiduciary duty as trustee.

{¶ 5} The panel concluded that in signing documents personally and in filing them with the Secretary of State indicating that she was the sole incorporator of Raphael's Inc., respondent violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 6-101(A)(1) (handling a legal matter which she knows she is not competent to handle).

{¶ 6} The panel heard substantial mitigating evidence to the effect that respondent did not profit from her conduct, that respondent was acting not for her own personal gain but as a friend to Sharon to whom she could not say "no," and that respondent had a long and honorable career as an attorney and as a person active in political, cultural, and charitable events in her community. Nevertheless, the panel found that respondent's conduct relating to Raphael's Inc., and her attempt to shield Sharon from the claims of creditors, warranted an actual suspension from the practice of law for six months.

{¶ 7} The board adopted the findings and conclusions of the panel, but recommended that respondent be suspended from the practice of law for one year, with six months of the year stayed, and then be placed on probation.

————————————

2

*Leon A. Weiss* and *Patti Jo Malnar,* for relator.

*John J. Montello,* for respondent.

_____

***Per Curiam*.**

**{¶ 8}** We adopt the findings and conclusions of the board.  As we said in *Warren Cty. Bar Assn. v. Bunce* (1998), 81 Ohio St.3d 112, 115, 689 N.E.2d 566, 568,  "When imposing a sanction, we will consider not only the duty violated, but the lawyer's mental state, the actual injury caused, and whether mitigating factors exist."   Based on our review of the record and noting that respondent has already been censured by the probate court, we suspend respondent from the practice of law for one year, with the entire year stayed.  During the year of stayed suspension respondent shall be on probation and her legal practice monitored by an attorney selected by and reporting regularly to the relator.  Costs are taxed to respondent.

*Judgment accordingly*.

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

_____

**COOK, J., dissenting.**

**{¶ 9}** I agree with the majority that suspension is the appropriate sanction here, but I respectfully depart from the majority's decision to stay the entire suspension in favor of supervised probation.

**{¶ 10}** The majority's decision to suspend respondent finds support in the ABA Standards for Imposing Lawyer Sanctions.[1]   When respondent filed documents with the Secretary of State indicating that she was the sole incorporator of Raphael's Inc., she engaged in conduct involving fraud, dishonesty, deceit, or

_____

1. See ABA Center for Professional Responsibility, Standards for Imposing Lawyer Sanctions (1991 & Amend.1992).

misrepresentation. Respondent also handled a legal matter that she knew she was not competent to handle. The ABA Standards provide that "[i]n order to protect the public, a suspension should be imposed in cases when a lawyer engages in practice areas in which a lawyer knows that he or she is not competent." Standard 4.52, Commentary.

{¶ 11} Citing "substantial" mitigating evidence, the majority chooses to depart from the board's recommendation and to stay respondent's entire suspension. I agree that respondent's lack of a dishonest or selfish motive, cooperative attitude toward the disciplinary proceedings, censure by the probate court, and honorable reputation are mitigating factors that reflect the board's own recently proposed Guidelines for Imposing Lawyer Sanctions.[2] And due to these mitigating factors, I would stay six months of respondent's suspension. Nevertheless, I concur with the panel's recommendation that "any sanction which [does] not include some actual suspension from the practice of law would send the wrong message to the rest of the Bar and to the public in general." The panel's approach reflects the ABA's position that "[i]f a lawyer's misconduct is serious enough to warrant a suspension from practice, the lawyer should not be reinstated until rehabilitation can be established. * * * [I]t is preferable to suspend a lawyer for at least six months in order to ensure effective demonstration of rehabilitation." Standard 2.3, Commentary.

{¶ 12} Because I believe that the board's recommended one-year suspension with six months stayed is the appropriate sanction in this case, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

---

2. See Board of Commissioners on Grievances and Discipline, Proposed Rules and Regulations Governing Procedure on Complaints and Hearings, Sections 10(B)(2), (4), (5), and (6), Guidelines for Imposing Lawyer Sanctions.

January Term, 2000

_____